UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

CHS FL, LLC, *et al.*,

Debtors.[1]
_______________________________________/

Chapter 11

Case No. 2:26-bk-01087-FMR
*Jointly Administered*

THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE OF CHS FL, LLC, *et al.*, on behalf of the Bankruptcy Estate of CHS FL, LLC *et. al.*,

Plaintiff,

v.

YITZCHAK "ISAAC" LEFKOWITZ, individually, TN CORRECT HEALTH SERVICES LLC, and CORRECT HEALTH SERVICES LLC,

Defendants.
_______________________________________/

Adv. Pro. No. __________

**COMPLAINT FOR INJUNCTIVE RELIEF, TURNOVER OF ESTATE PROPERTY, AND DAMAGES**

The Statutory Unsecured Claimholders' Committee of CHS FL, LLC, et al. (the "**Committee**"), brings this adversary complaint on behalf of the Bankruptcy Estate of CHS FL, LLC, YesCare Corp., CHS TX, Inc., CHS AL, LLC, CHS Care TX, LLC, CHS Care NY, LLC, and Corizon Health of New Mexico, LLC (collectively, the "**Debtors**") against Yitzchak "Isaac" Lefkowitz a/k/a Isaac Lefkowitz ("**Lefkowitz**"), TN Correct Health Services LLC ("**TN Correct**

[1] The address of the Lead Debtor is 3347 Tamiami Trail E., Naples, FL 34112. The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

**Health**"), and Correct Health Services LLC ("**Correct Health**" and, together with Lefkowitz and TN Correct Health, the "**Defendants**"), and states:

**NATURE OF ACTION**

1. This adversary proceeding arises from Defendants' brazen and systematic theft of property of the Debtors' estates. Lefkowitz—the sole director of YesCare Corp. and the owner and controller of the non-debtor entities through which the Debtors' receivables flow—has stolen no less than $2.06 million in estate property through a series of fraudulent schemes perpetrated both before and after the Petition Date, and, by cutting of the Debtors' access to certain accounts, has positioned himself to intercept the Debtors' incoming receivables.

2. Specifically, Lefkowitz has: (a) obtained a $1.7 million cashier's check, causing estate funds to be withdrawn from a non-debtor account used by the Debtors, and, upon information and belief, has misrepresented that the check was issued for the purpose of paying payroll taxes; (b) caused $359,139.10 in unauthorized post-petition transfers of estate funds by making transfers from non-debtor accounts holding estate property to pay personal expenses and other non-Debtor obligations; and (c) shut off the Debtors' visibility into the non-debtor bank accounts through which the Debtors' receivables are collected, effectively intercepting those receivables, by denying the Debtors' access to even view bank activity or statements related to these accounts.

3. Emergency relief is required because, absent an immediate freeze on Defendants' bank accounts and a mandatory injunction requiring turnover, misappropriated funds will likely be dissipated beyond recovery. Upon information and belief, the funds are at immediate risk of being placed beyond the reach of this Court. The risk of irreparable harm is immediate, ongoing, and compounding with each passing day.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding is related to the jointly administered chapter 11 cases of the Debtors, which are pending in this Court under Case No. 2:26-bk-01087-FMR.

6. This adversary proceeding is commenced pursuant to Federal Rules of Bankruptcy Procedure 7001(1) (proceeding to recover money or property of the estate) and 7001(7) (proceeding to obtain an injunction).

7. The statutory predicates for relief include 11 U.S.C. §§ 105(a), 362(a), 362(k), 541, and 542, and Federal Rule of Bankruptcy Procedure 7065.

## PARTIES

8. **Plaintiff.** The Committee is the Statutory Unsecured Claimholders' Committee appointed in the above-captioned chapter 11 cases. The Committee brings this action on behalf of the Debtors' estates and is authorized to do so pursuant to 11 U.S.C. § 1103(c)(5). Prior to filing this Complaint, the Committee obtained the Debtors' express consent and permission to pursue the claims asserted herein on behalf of the Debtors' estates.

9. **Defendant Lefkowitz.** Yitzchak "Isaac" Lefkowitz is an individual residing at 1528 56th Street, Apt. 1, Brooklyn, New York 11219. Lefkowitz is the sole director of YesCare Corp. and the owner and sole controller of Correct Health Services LLC, which is the sole managing member of YesCare Corp.

10. **Defendant TN Correct Health Services LLC.** TN Correct Health Services LLC is an entity owned and/or controlled by Lefkowitz that collects government receivables on behalf

of the Debtors and is required to route them through non-debtor bank accounts. Its principal place of business is 205 Powell Place, Brentwood, Tennessee 37027. According to corporate filings in the state of Tennessee, TN Correct Health Services LLC was formed on January 30, 2025 under the legal name Geneva Consultings LLC. By February 21, 2025, Geneva Consultings LLC registered multiple assumed names, including: “CHS Employee Group LLC,” “CHS FL LLC,” “CHS TX LLC,” “CHS AL LLC”, and “Yescare services.” On September 15, 2025, Geneva Consultings LLC changed its legal name to TN Correct Health Services LLC. Upon information and belief, TN Correct Health Services LLC maintains bank accounts into which estate property has been deposited and from which unauthorized transfers have been made.

11. **Defendant Correct Health Services LLC.** Correct Health Services LLC is the sole managing member of YesCare Corp. and is owned and controlled by Lefkowitz. Its principal place of business is 205 Powell Place, Brentwood, Tennessee 37027. Correct Health Services LLC maintains non-debtor accounts through which the Debtors’ receivables flow and from which the unauthorized transfers were made.

## FACTUAL BACKGROUND

### A. The Bankruptcy Cases.

12. On May 8, 2026 (the “**Petition Date**”), CHS FL, LLC, YesCare Corp., CHS TX, Inc., and CHS AL, LLC filed voluntary petitions for relief under chapter 11. On May 13, 2026, CHS Care TX, LLC, CHS Care NY, LLC, and Corizon Health of New Mexico, LLC filed voluntary chapter 11 petitions.

13. YesCare Corp. is the corporate parent of the other Debtors. Correct Health Services LLC is YesCare Corp.’s sole managing member, and Lefkowitz is the sole owner of Correct Health Services LLC and the sole director of YesCare Corp. Through this chain of ownership, Lefkowitz exercises exclusive control over all Debtor entities.

**B. Lefkowitz's Control Over Non-Debtor Accounts.**

14. TN Correct Health Services LLC collects receivables on behalf of the Debtors and routes them through non-debtor bank accounts controlled by Lefkowitz. Similarly, correctional and healthcare facilities that contracted with the Debtors typically wire their payments to non-debtor accounts controlled by Lefkowitz rather than to accounts held directly by the Debtors.

15. Prior to the events described herein, the Debtors had visibility into these non-debtor bank accounts and used them in the preparation of the Debtors' Monthly Operating Reports ("**MORs**"). Shortly after the Debtors sent a demand letter to Lefkowitz that demanded, among other things, (i) the return of $359,139.10 in estate funds that were improperly transferred to satisfy personal and/or non-debtor obligations and expenses and (ii) "bank activity statements for all non-debtor accounts that are or have been used by the Debtors during the Chapter 11 Cases", Lefkowitz took affirmative steps to revoke the Debtors' access to these accounts, preventing the Debtors and their professionals from monitoring estate funds.

16. Redirecting payments from former clients to debtor-controlled accounts, in lieu of non-debtor accounts that have historically been used in Debtors' business operations is bureaucratically cumbersome to change. As a result, most of the incoming receivables from former customers have continued to flow into non-debtor accounts held and controlled by Lefkowitz.

**C. The $359,139.10 in Unauthorized Post-Petition Transfers (May 2026).**

17. Between May 13, 2026 and May 15, 2026—within days of the Petition Date—Lefkowitz caused $359,139.10 in unauthorized transfers to be made from non-debtor accounts holding estate property, including an account maintained at Peapack Private Bank & Trust.

18. These transfers were not made on behalf of or for the benefit of the Debtors' estates. Specifically:

(a) On May 13, 2026, $141,513.74 was wired to American Express;

(b) On May 14, 2026, $100,000.00 was wired for tax payments;

(c) On May 15, 2026, $40,000.00 was wired for payroll;

(d) On May 15, 2026, a check in the amount of $2,625.36 to Fronden Orthopedics cleared; and

(e) On May 27, 2026, $75,000.00 was wired to Schenk and Buetsch for legal services.

19. None of these transfers were authorized by the Debtors or their estates. Upon information and belief, these payments were made to satisfy personal obligations of Lefkowitz and/or obligations of non-debtor entities he controls, using funds that constitute property of the Debtors' estates.

20. On June 23, 2026, David Goldwasser, the Debtors' Chief Restructuring Officer, demanded that Lefkowitz return the transferred funds. Lefkowitz refused.

21. On June 24, 2026, Polsinelli PC, counsel for the Debtors, sent Lefkowitz and TN Correct Health Services LLC/Correct Health Services LLC a formal demand letter requiring return of the $359,139.10 plus any additional estate funds, as well as bank activity statements for all non-debtor accounts used by the Debtors during the Chapter 11 Cases. A true and correct copy of the letter is attached hereto as **Exhibit A.**

22. The demand required compliance within two (2) business days. Lefkowitz did not comply.

**D. The $1.7 Million Cashier's Check Scheme (June–July 2026).**

23. On or around June 10 2026, Yitz Taub of FIA (the Debtors' financial advisor) noticed that approximately $1.7 million in estate funds was missing from one of the non-debtor accounts. Mr. Taub contacted Lefkowitz to inquire and Lefkowitz's explanation was that he

withdrew the funds, which constituted everything in the account, to make a payment toward an outstanding payroll tax obligation of approximately $1.714 million.

24. On or about June 12, Lefkowitz provided Mr. Taub with purported confirmation of delivery of the cashier's check to UKG Kronos, the Debtors' third party payroll processor. After many email exchanges and telephone communications, Mr. Taub determined that the envelope that Lefkowitz had sent to UKG went to its loading dock, had been received, and contained a piece of paper but no check.

25. Therefore, it appears that Lefkowitz still has possession of that cashier's check.

26. It appears that Lefkowitz's representation that the funds were to be used for payroll taxes was false. The Debtors still owe the payroll taxes, but the Debtors do not have the funds available to pay them. Upon information and belief, Lefkowitz diverted, or plans to divert, the $1.7 million to his own use or to accounts he controls, constituting a misappropriation of estate property under false pretenses.

27. Upon information and belief, the $1.7 million in Lefkowitz's possession through the cashier's check scheme is in addition to the $359,139.10 he stole in May 2026 as described above, bringing the total known misappropriation of estate property to approximately $2.06 million.

### E. <u>Interception of Ongoing Receivables.</u>

28. In addition to the specific misappropriations described above, Lefkowitz has shut off the Debtors' visibility into the non-debtor bank accounts to which the Debtors previously had access when preparing monthly operating reports.

29. Because facilities that contract with the Debtors typically wire their payments to non-debtor accounts controlled by Lefkowitz, incoming receivables from the Debtors' customers are deposited into accounts controlled exclusively by Lefkowitz and the non-debtor Defendants.

30. Upon information and belief, Lefkowitz and the non-debtor Defendants are continuing to receive and retain estate property in the form of receivables owed to the Debtors and are exercising unauthorized control over such property in violation of the Bankruptcy Code.

### F. Lefkowitz's Pattern of Misconduct.

31. Lefkowitz's conduct in these cases is part of a broader pattern of fraud and self-dealing. Prior to the Debtors' bankruptcy filings, Lefkowitz orchestrated approximately $31 million in insider transfers from Corizon Health, Inc. in connection with a divisional merger in May 2022, including approximately $24.5 million to M2 LoanCo, $5.5 million to Geneva Consulting, and approximately $957,000 to PharmaCorr.

32. Lefkowitz also forged a bank statement to obtain a fairness opinion for the May 2022 divisional merger.

33. Throughout those various proceedings, Lefkowitz has repeatedly invoked his Fifth Amendment privilege against self-incrimination, has defied multiple court orders regarding discovery, and has been the subject of a motion to hold him in contempt filed by the Committee on July 2, 2026 [Docket No. 330].

## COUNT I
## Turnover of Estate Property (11 U.S.C. § 542)

34. The Committee incorporates by reference all preceding paragraphs as though fully set forth herein.

35. Pursuant to 11 U.S.C. § 541(a)(1), the Debtors' estates include all legal or equitable interests of the Debtors in property as of the commencement of the cases.

36. The funds misappropriated by Defendants—including the $1.7 million transfer caused by Lefkowitz through the cashier's check scheme, the $359,139.10 in unauthorized post-petition transfers, and ongoing receivables deposited into non-debtor accounts—constitute property of the Debtors' estates.

37. Pursuant to 11 U.S.C. § 542(a), any entity, other than a custodian, in possession, custody, or control of property that the trustee may use, sell, or lease shall deliver to the trustee, and account for, such property or the value of such property.

38. Defendants are in possession, custody, or control of property of the Debtors' estates and are obligated to turn over such property.

39. Demand for turnover has been made and refused. By way of example, on June 24, 2026, the Debtors' counsel formally demanded the return of the $359,139.10 and all additional estate funds within two (2) business days. Lefkowitz did not comply.

40. The Committee is entitled to an order compelling Defendants to turn over all property of the Debtors' estates in their possession, custody, or control, together with an accounting of all such property.

**COUNT II**
**Violation of the Automatic Stay (11 U.S.C. § 362)**

41. The Committee incorporates by reference all preceding paragraphs as though fully set forth herein.

42. Upon the filing of the Debtors' bankruptcy petitions, the automatic stay imposed by 11 U.S.C. § 362(a) became effective, prohibiting, *inter alia*, any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate. See 11 U.S.C. § 362(a)(3).

43. Defendants' post-petition transfers of $359,139.10 from accounts holding estate property, Lefkowitz's misappropriation of $1.7 million through the cashier's check scheme, and the continued interception of receivables owed to the Debtors each constitute willful violations of the automatic stay.

44. Defendants had actual knowledge of the Debtors' bankruptcy filings at the time they took these actions. Lefkowitz, as sole director of YesCare Corp., was intimately involved in the filing process and had actual notice of the automatic stay.

45. Pursuant to 11 U.S.C. § 362(k), an individual injured by any willful violation of the stay shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages.

46. Defendants' violations of the automatic stay are willful, egregious, and ongoing. The Committee is entitled to actual damages, costs, attorneys' fees, and punitive damages.

**COUNT III**
**Conversion**

47. The Committee incorporates by reference all preceding paragraphs as though fully set forth herein.

48. The Debtors' estates have an immediate right to possession of the funds misappropriated by Defendants, including the $1.7 million obtained through the cashier's check scheme, the $359,139.10 in unauthorized post-petition transfers, and all receivables intercepted by Defendants.

49. Defendants exercised dominion and control over estate property in a manner inconsistent with and in derogation of the Debtors' estates' rights to such property.

50. Defendants' exercise of dominion and control over estate property was unauthorized, wrongful, and constitutes conversion under applicable law.

51. As a direct and proximate result of Defendants' conversion of estate property, the Debtors' estates have suffered damages in an amount no less than $2,059,139.10, together with interest, consequential damages, and such additional amounts as may be proven at trial.

**COUNT IV**
**Injunctive Relief (11 U.S.C. § 105(a))**

52. The Committee incorporates by reference all preceding paragraphs as though fully set forth herein.

53. Pursuant to 11 U.S.C. § 105(a), the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, including injunctive relief under Federal Rule of Bankruptcy Procedure 7065.

54. The Committee is likely to succeed on the merits of its claims for turnover, violations of the automatic stay, and conversion. The evidence demonstrates that Lefkowitz misappropriated no less than $2.06 million in estate property through fraud and unauthorized transfers, and is continuing to intercept estate receivables.

55. The Debtors' estates will suffer irreparable harm absent immediate injunctive relief. Lefkowitz has demonstrated a clear intent to dissipate and conceal estate property. He has refused demands for turnover, revoked the Debtors' access to financial accounts, repeatedly invoked the Fifth Amendment, defied discovery orders, and is presently unrepresented and evading service. Money damages alone cannot adequately compensate the estates because, if dissipated, the stolen funds will be unrecoverable.

56. The balance of hardships tips decidedly in favor of the Committee and the Debtors' estates. The misappropriated funds belong to the estates and their creditors. Freezing accounts containing stolen property imposes no cognizable hardship on Defendants.

57. Injunctive relief will serve the public interest by preserving estate property for distribution to creditors in accordance with the Bankruptcy Code's priority scheme and by deterring further looting of the estates.

58. The Committee seeks the following emergency injunctive relief:

(a) A temporary restraining order and preliminary injunction freezing all bank accounts where the misappropriated funds (the $1.7 million and the $359,139.10) were deposited, including but not limited to accounts at Peapack Private Bank & Trust and any other accounts owned, controlled, or maintained by Lefkowitz, Correct Health Services LLC, TN Correct Health Services LLC, or any other entity controlled directly or indirectly by Lefkowitz;

(b) An order requiring the Defendants to provide, within forty-eight (48) hours, a full and complete accounting of all estate funds each received, transferred, disbursed, or controlled since May 8, 2026;

(c) An order prohibiting Lefkowitz and any entity he owns or controls, directly or indirectly, from making any further transfers, withdrawals, or disbursements of estate property;

(d) An order requiring Lefkowitz to disclose, within forty-eight (48) hours, all bank accounts he owns or controls, directly or indirectly, including all accounts in the name of or controlled by Correct Health Services LLC, TN Correct Health Services LLC, CHS Employee Group LLC, Adar Management LLC, or any other entity associated with the Debtors' business;

(e) An order directing the immediate turnover of all property of the Debtors' estates in Defendants' possession, custody, or control;

(f) An order directing the immediate turnover of possession and custody of all bank accounts containing property of the Debtors' estates, including all accounts owned, controlled, or maintained by Lefkowitz, Correct Health Services LLC, TN Correct Health Services LLC, or any other entity controlled directly or indirectly by Lefkowitz;

(g) An order directing the Defendants and all financial institutions holding accounts containing property of the Debtors' estates to execute all documents necessary to effectuate turnover and to make the Debtors the sole signatory on such accounts;

(h) An order requiring Lefkowitz to immediately restore the Debtors' visibility into all non-debtor accounts used in connection with the Debtors' business operations and providing the Debtor with control over such accounts; and

(i) Such other and further injunctive relief as this Court deems just and appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, the Committee respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

(a) Granting a temporary restraining order and preliminary injunction freezing all bank accounts in which the misappropriated estate property was deposited, including without limitation all accounts at Peapack Private Bank & Trust and all accounts owned, controlled, or maintained by Lefkowitz, Correct Health Services LLC, TN Correct Health Services LLC, CHS Employee Group LLC, or any other entity controlled directly or indirectly by Lefkowitz;

(b) Ordering Defendants to provide a full and complete accounting of all estate property received, transferred, disbursed, commingled, or otherwise controlled since the Petition Date;

(c) Ordering Defendants to turn over to the Debtors' estates all property of the estate in their possession, custody, or control, including but not limited to the $1.7 million obtained through the cashier's check scheme, the $359,139.10 in unauthorized post-petition transfers, and all receivables intercepted by Defendants;

(d) Prohibiting Defendants from making any further transfers, withdrawals, or disbursements from any account containing estate property;

(e) Ordering Lefkowitz to disclose all bank accounts he owns or controls, directly or indirectly;

(f) Ordering Lefkowitz to restore the Debtors' access to and visibility into all non-debtor accounts used in connection with the Debtors' business and providing the Debtors with control over such accounts;

(g) Ordering the immediate turnover of possession and custody of all bank accounts containing property of the Debtors' estates to the Debtors;

(h) Directing the Defendants and all financial institutions holding accounts containing property of the Debtors' estates to execute all documents necessary to effectuate turnover and to make the Debtors the sole signatory on such accounts;

(i) Awarding the Committee actual damages in an amount no less than $2,059,139.10, together with prejudgment interest;

(j) Awarding punitive damages for Defendants' willful violations of the automatic stay;

(k) Awarding the Committee its reasonable attorneys' fees, costs, and expenses incurred in connection with this proceeding pursuant to 11 U.S.C. § 362(k); and

(l) Granting such other and further relief as this Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 13, 2026
Miami, Florida

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Luis Salazar*_________________________
Luis Salazar, Esq. (Florida Bar No. 147788)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
Sarah A. Carnes, Esq. (admitted *pro hac vice*)
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
lsalazar@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com

\- and -

**PROSKAUER ROSE LLP**

Brian Rosen, Esq. (admitted *pro hac vice*)
Ehud Barak, Esq. (admitted *pro hac vice*)
Daniel Desatnik, Esq. (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

\- and -

Paul Possinger, Esq. (admitted *pro hac vice*)
Jordan Sazant, Esq. (admitted *pro hac vice*)
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
ppossinger@proskauer.com
jsazant@proskauer.com

*Counsel to the Statutory Unsecured Claimholders' Committee of CHS FL, LLC, et al.*

# EXHIBIT A

**From:** Debra Jackson <DJackson@Polsinelli.com> <DJackson@Polsinelli.com>
**Sent:** Wednesday, June 24, 2026 3:05 PM
**To:** isaaclefk@gmail.com
**Cc:** mike@dallagolaw.com; dgoldwasser@fiacp.com; Trinitee Green; Jeremy Johnson
**Subject:** Case No. 26-01087-FMR | In re CHS FL, LLC, et al.
**Attachments:** June 24th Demand Letter for Turnover of Estate Property (to Isaac and Non-Debtor Entity)(111928637.1)-c.pdf

Mr. Lefkowitz,

Please see the attached correspondence, which I'm sending on behalf of Trinitee Green in connection with the bankruptcy cases pending in the Middle District of Florida.

**Debra Jackson**
*Legal Administrative Assistant*

djackson@polsinelli.com
312.873.3674
150 N. Riverside Plaza
Suite 3000
Chicago, IL 60606

POLSINELLI

4020 Maple Avenue, Suite 300, Dallas, TX 75219 • (214) 397-0030

June 24, 2026

Trinitee G. Green
(214) 661-5508
(312) 275-7330 Fax
tggreen@polsinelli.com

**VIA EMAIL AND CERTIFIED MAIL/RETURN RECEIPT**

Yitzchak Isaac Lefkowitz
1528 56th St. Apt. 1
Brooklyn, NY 11219-4737
isaaclefk@gmail.com

TN Correct Health Services LLC
205 Powell Pl
Brentwood, TN 37027

**Re: In re CHS FL, LLC, et al. (Jointly Administered under Case No. 26-01087-FMR): Demand for Turnover of Estate Property, including, without limitation, funds transferred to or for the benefit of non-debtors**

Dear Mr. Lefkowitz:

As you know, our firm represents CHS, FL, LLC, YesCare Corp., CHS TX, Inc., CHS AL, LLC, CHS Care TX, LLC, CHS Care NY, LLC, and Corizon Health of New Mexico, LLC (collectively, the "**Debtors**"), in the above-referenced jointly administered chapter 11 cases (the "**Chapter 11 Cases**"), which were filed in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") on May 8, 2026 and May 13, 2026, as applicable.

The purpose of this correspondence is to demand the immediate turnover of any and all estate property, including, without limitation, funds that were transferred from non-debtor accounts, including an account maintained at PeaPack Private Bank & Trust. Specifically, we understand that the following post-petition transfers were made of property of the Debtors' estates:

- On May 13, 2026, $141,513.74 was wired to American Express;
- On May 14, 2026, $100,000 was wired for tax payments;
- On May 15, 2026, $40,000 was wired for payroll;
- On May 15, 2026, $75,000 was wired to Schenk and Buetsch for legal services; and

POLSINELLI



•On May 15, 2026, a check in the amount of $2,625.36 to Fronden Orthopedics cleared.

The amount of these unauthorized transfers totals $359,139.10. We understand that these payments were not made on behalf of or for the benefit of the Debtors' estates, and we further understand that you caused the transfers to be made.

The Debtors' estates are comprised of, subject to certain exceptions that do not apply here, "all legal or equitable interest of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). Additionally, Bankruptcy Code section 542 requires that you and/or Correct Health Services LLC deliver to the Debtors' property to the Debtors.

I understand that on or about June 23, 2026, you were informally asked by David Goldwasser, the chief restructuring officer, to return the transferred funds to the Debtors' estates, and that you have refused to do so. Your refusal to return estate property is a violation of the automatic stay punishable by sanctions and damages, including attorneys' fees. *See* 11 U.S.C. § 362(k).

Accordingly, the Debtors demand that you and/or Correct Health Services LLC, which you control, immediately return $359,139.10 plus any additional estate funds that you may have transferred to yourself or to any non-debtor entities. The Debtors further demand that you provide bank activity statements for all non-debtor accounts that are used or have been used by the Debtors during the Chapter 11 Cases. If the bank activity reports are not received and funds are not returned no later than two (2) business days from the date hereof, the Debtors, as fiduciaries of the estates, will be forced to take the necessary legal actions against you and Correct Health Services LLC.

If you believe that the funds do not constitute estate property, within two (2) business days, please provide a written explanation, inclusive of supporting documentation, and any defenses that you believe you may have to the requirement to comply with the automatic stay, under section 362, and with the turnover requirements under section 542.

We strongly urge you to give this matter the proper attention. The Debtors reserve all rights.

Sincerely

Trinitee G. Green

Trinitee G. Green

cc:
Jeremy R. Johnson, jeremy.johnson@polsinelli.com
Michael R. Dal Lago, mike@dallagolaw.com
David Goldwasser, dgoldwasser@fiacp.com